[Opinion delivered May 10, 1880.]

---

WM. H. MAYFIELD v. HEIRS OF RAMON MUSQUEZ.

(Case No. 3172.)

1. REMOVING CLOUD FROM TITLE.— In suits to remove cloud from title the plaintiff must allege and show title to the land, or that he is in possession. Story; Eq. Jur., § 703; Mitford & Tyler's Pl. and Pr. in Eq., p. 249.

2. CONFISCATION — CONFEDERATE STATES.— Upon the fall of the Confederate States as a government the proceedings had by its officers in its name and in its courts for the "sequestration of the estates and property and effects of alien enemies," became invalid for any purpose as against the owner, and one claiming land thereunder cannot be injured by the assertion of a lien against land still belonging to another.

3. CONFEDERATE RECORDS — QUÆRE.— While the act of the eleventh legislature, page 255, styled " An act providing for the custody and authentication of the records of the Confederate courts," may be in force to the extent of providing a mode of proving such records,

could it impose that duty upon the United States courts? No force was added to the proceedings in the Confederate States courts by the act. They were invalid as affecting the owners' rights to property.

APPEAL from Karnes.   Tried below before the Hon. David D. Claiborne.

October 8, 1874, Mayfield filed his suit in the district court of Karnes county against Francesca Musquez and others, alleged to be the heirs of Ramon Musquez, deceased, alleging that plaintiff owned, by "a good legal, valid and equitable title," certain lands described in the petition; that the defendants "set up some kind of pretended claim to said land, and claim that they have some kind of a vendor's or other equitable lien on said land;" that the claim of said defendants "is a slander and a cloud upon his title;" with prayer for judgment canceling their claim, "that the same as a cloud upon his title be removed;" and for costs and general relief.

Service was had by publication November 8, 1875. No appearance having been made by defendants, a trial was had, and a jury returned a verdict for the defendants, upon which judgment was rendered. A motion for new trial was overruled and plaintiff appealed.

On the trial the plaintiff offered in evidence a document certified by Mathew Hopkins, clerk of the United States district court for western district of Texas, "custodian of the records of the late Confederate States district court for said district," to be a copy of proceedings in the Confederate States court in the matter of the Confederate States v. Charles and W. W. Leland, a proceeding to confiscate, etc. In the proceedings the land was ordered to be sold, was sold, and return of sale made by McCampbell, a receiver, and sale approved.

In connection with the transcript, and without proof of execution or of filing and notice under the statute, was offered a deed of date August 13, 1863, by Jno. S. McCampbell, Confederate States receiver, etc., to the plaintiff for the land.

The transcript and deed were excluded by the court, no reason for the act appearing, to which exceptions were taken.

The only other evidence offered was the testimony of Mc-Campbell, by depositions, in which he testified that he knew of a tract of land bought by Leland & Leland (or one of them) of Ramon Musquez, March 5, 1860, for which purchase four promissory notes were given (described). That witness, as Confederate States receiver, January 24, 1863, paid G. W. Paschal $2,082.78, he signing a receipt therefor, "I. A. & G. W. Paschal, agents for I. H. Stribling and R. Musquez." Witness also referred to proceedings in the Confederate States court, where it will be found that Ramon Musquez intervened (in certain cases) and recovered judgment for the purchase money of the land. Witness was ordered to pay the same, and did so, giving a memorandum copy of the settlement with Paschal, and his receipt.

No instructions to the jury are given in the record.

The errors assigned are:

1. The exclusion of the transcript from the Confederate States court for western district of Texas, offered by plaintiff.

2. Exclusion of the deed from McCampbell to the plaintiff.

3. Overruling motion for new trial (only additional grounds being as to charge of court, which are not in the transcript).

4. The verdict and judgment are contrary to the law and the evidence.

*L. S. Lawhon*, for appellant.

*Coopwood & Stewart*, for appellees.

A. S. WALKER, J.— In suits to remove clouds from title the plaintiff should allege and show a title to the land or that he is in possession. Story's Eq. Jur., § 703; Mitford & Tyler's Pl. & Pr. in Eq., p. 249.

In this case the title offered, as well as the evidence of the act of the ancestor of the defendants relied upon as authorizing the decree, both depend upon the admissibility and effect of the document offered and excluded from the jury.

It is believed to be universally held that, upon the fall of the Confederate States as a government, the proceedings had by its officers in its name and in its courts, for the sequestration of the estates, property and effects of "alien enemies," became invalid for any purpose as against the owner. They presented no obstacle to the re-occupation by the owner on his return to the state at the close of the war. It is admitted in appellant's brief that these proceedings would have no effect against Leland. The court itself has been held invalid. Hickman v. Jones, 9 Wall., 197. And such decrees. Spratt v. U. S., 8 Ct. of Cl., 499.

If not good against Leland, then plaintiff has no title and he cannot be injured by the assertion of a lien by defendants against land still belonging to Leland.

But the documents are not duly authenticated. We have been referred to no statute making the clerk of the United States court the custodian of the records and archives of the late Confederate States court.

The mere manual possession of the books and papers of the extinct court gives him no authority to certify copies as of his own office. His certificate gives no authenticity to papers shown in the certificate not to be in his official custody.

It has been held that the act of congress of May 26, 1790, and act of March 27, 1804, " do not extend to judgments of the courts of the late Confederate States." Wharton on Ev., sec. 99, and cases cited.

Of such collections of the archives of the Confederate States government, it has been held, when copies were offered, that "the originals must be in some sense records," and the copies excluded. Wharton on Ev., sec. 114, and cases cited; Schaben v. U. S. C. Court of Claims Rep., 230.

The document offered was not competent testimony and not improperly rejected.

The deed from McCampbell to plaintiff does not appear to have been proved or filed under the statute. Its rejection is not shown to have been erroneous.

But taking all the testimony offered, added to that admit-

ted, the absence of any interest in the land in the plaintiff would prevent a decree in his favor.

No error appearing in the record, the judgment below should be affirmed.

NOTE.— Since writing the opinion, we have noticed chapter 188, Laws of 11th Leg., p. 255, styled, "An act providing for the custody and authentication of the records of the Confederate courts."

This act authorized the "district courts of the United States" to take charge of and preserve the records and papers of the late Confederate district courts, held within the limits of the state; to make copies; such copies to be "received in evidence in all the courts of this state, subject to the general laws of evidence."

This act may still be in force, to the extent of providing a mode of proving such records. It could not impose the duty upon the United States district courts; nor have they, so far as we know, by any order or act of the court, assumed the authorized custody.

But if, by a free construction of the act, the copy certified by M. Hopkins, clerk, certifying that he is the custodian, be regarded as complying with the law, still, as held above, in the absence of any interest in plaintiff in the land, as shown, taking all the testimony offered and admitted, the exclusion did not injure the plaintiff. No force was added to the proceedings in the Confederate States courts by the act cited above; they were invalid as affecting Leland's rights to the land.

AFFIRMED.